# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WASHBURN S. OBERWAGER et al., Plaintiffs, | CIVIL ACTION |
| v. | NO. 06-2685 |
| MCKECHNIE LTD. et al., Defendants. | FILED DEC 1 0 2007 |

## Memorandum and Order

YOHN, J.                                                                 December 10, 2007

Plaintiffs[1] in the instant action filed a complaint and then an amended complaint seeking to have an arbitration award vacated, modified, or amended. Defendants McKechnie Ltd. ("McKechnie") and Western Sky Industries, LLC ("Western Sky") have moved for summary judgment; they seek to have the action dismissed and the arbitration award confirmed. The parties dispute whether the Delaware Uniform Arbitration Act ("Delaware Act"), Del. Code Ann. tit. 10, §§ 5701-5725, or the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, is applicable. For the following reasons, I will dismiss the action as untimely.

ENTERED
DEC 11 2007
CLERK OF COURT

---

[1] Plaintiffs include Washburn S. Oberwager, Dinesh R. Desai, First Britannia Mezzanine Capital BV, First Britannia Mezzanine NV, International Mezzanine Capital BV, and International Mezzanine Investment NV.

1

## I. Background

Plaintiffs were the shareholders of defendant Western Sky. On May 24, 1999, McKechnie purchased Western Sky from plaintiffs through a stock purchase agreement ("SPA"). (*See* Defs. Mot. Summ. J., Ex. A.) The SPA was negotiated and closed in Philadelphia, Pennsylvania. As a result of the purchase, McKechnie acquired two properties of Western Sky: (1) "the Azusa facility" located in Hartwell, California[2] and (2) "the Electromech facility" located in Wichita, Kansas. In conjunction with the acquisition of these properties, McKechnie and plaintiffs entered into an environmental escrow agreement ("EEA"). (*See* Defs. Mot. Summ. J., Ex. B.) The EEA created an environmental escrow account from which McKechnie could recover fifty percent of "environmental damages"—as defined by section 1.24 of the SPA (*see* Defs. Mot. Summ. J., Ex. A § 1.24)—incurred in connection with the Azusa and Electromech facilities. Under the EEA, McKechnie could recover a maximum amount of $4.15 million.

On June 28, 2004, McKechnie requested $1,389,978.20 from the environmental escrow account, representing fifty percent of the total environmental damages incurred in connection with the Azusa and Electromech facilities. A significant portion of the environmental damages resulted from McKechnie's settlement of several mass-toxic tort claims related to the facilities.[3]

---

[2] On March 24, 1997, Western Sky purchased the shares of Hartwell Corporation. Through the purchase, it acquired Hartwell Corporation's property, including the Azusa facility. Pursuant to the agreement of purchase, the sellers of the Hartwell Corporation shares agreed to fund an environmental account for the purpose of paying environmental expenses up to $4 million. The right of Western Sky to recover environmental expenses from this account expired on March 24, 2003. (*See* Pls. Br. Opp'n Summ. J., Ex. N.)

[3] The toxic tort plaintiffs alleged that industrial operations from the Asuza and Electromech facilities caused their drinking water to be contaminated. (Arbitration Op. 6-7, Jan. 9, 2006.)

2

Plaintiffs objected to the amount requested because it was allegedly unreasonable. After the parties failed to resolve their dispute through non-binding mediation, they entered into arbitration proceedings pursuant to section 11.10 of the SPA. (*See* Defs. Mot. Summ. J., Ex. A § 11.10.) As a result, the American Arbitration Association ("AAA") referred the dispute to the International Centre for Dispute Resolution ("ICDR") in New York and appointed John Wilkinson, an experienced commercial attorney, as the arbitrator. On January 9, 2006, following several days of hearings, the arbitrator awarded McKechnie $1,458,312.00. (Arbitration Op. 23, Jan. 9, 2006.) In addition, the arbitrator rejected plaintiffs' counterclaim alleging that McKechnie had breached the SPA by failing to seek indemnification for the environmental damages from insurance companies and third parties. On February 8, 2006, plaintiffs filed a "Request for Interpretation or for an Additional Award of Claims Omitted" (the "request for interpretation"). The arbitrator rejected the request for interpretation on March 20, 2006, and the ICDR delivered the denial to the parties on March 22, 2006. (*See* Defs. Mot. Summ. J., Exs. D, G.)

On June 21, 2006, plaintiffs filed the original complaint in the instant action seeking to have the arbitration award vacated or modified; they filed the pending amended complaint on July 18, 2006.[4] The amended complaint asserts that Delaware law is applicable and that the arbitration award should be vacated or modified because (1) it is based on a manifest disregard for the law, (2) it is arbitrary and capricious, and (3) the arbitrator exceeded his authority by

---

[4] Defendants allege that they were not served with the original complaint but served with the amended complaint on October 20, 2006. (*See* Defs. Mot. Summ. J., Ex. B.) Plaintiffs claim they served the original complaint on defendants by email, with the cover letter and complaint attached, on June 21, 2006. (*See* Pls. Br. Opp'n Summ. J., Ex. Q.) As discussed below, the parties' dispute about the date of service is relevant to the timeliness of the current motion.

3

adjusting McKenchie's claim from $1,389,978.20 to $1,458,312.00. (*See* Am. Compl. ¶¶ 81-86; Pls. Resp. to Defs. Statement of Undisputed Facts ¶ 19.) On January 16, 2007, defendants filed a motion for summary judgment. They contend that the FAA is controlling and that the complaint is untimely under the FAA. In the alternative, defendants argue that plaintiffs' claims are without merit. Further, in their reply to plaintiffs' response,[5] defendants assert that a motion, not a complaint, is the exclusive vehicle to challenge an arbitration award under the FAA; therefore, they request that the instant action be dismissed and the arbitration award confirmed. For the following reasons, I will dismiss the action as untimely.

## II. Discussion

### A. Whether the FAA or the Delaware Act is Applicable

The parties dispute whether the FAA or the Delaware Act applies to the instant action. Plaintiffs assert that the parties contracted out of the FAA's requirements and elected to incorporate the arbitration rules under Delaware law. In support of this assertion, plaintiffs rely heavily on the SPA's choice-of-law clause, which provides:

> Governing Law. This Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to choice of law principles which would require the application of the law of any other jurisdiction.

---

[5] Plaintiffs failed to respond timely to defendants' motion for summary judgment after I granted several extensions. As a result, I dismissed the complaint on April 3, 2007 for lack of prosecution. Plaintiffs filed a motion for reconsideration on April 13, 2007. On May 4, 2007, I granted the motion for reconsideration while sanctioning plaintiffs' counsel $1500 to be paid to defendants' counsel for reasonable costs in preparing the response to plaintiffs' motion to reconsider. (*See* Order, May 4, 2007.)

(Defs. Mot. Summ. J., Ex. A § 11.2.) Defendants argue that the SPA's choice-of-law clause does not support a finding that the parties intended to contract out of the FAA's requirements, citing *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287 (3d Cir. 2001). In light of the Third Circuit's holding in *Roadway Package System*, I agree with defendants and conclude that the FAA is applicable to the instant action.

The FAA was enacted "to overcome courts' refusals to enforce agreements to arbitrate," *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 269 (1995), and applies "to any 'written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction,'" *Roadway Package Sys.*, 257 F.3d at 292 (quoting 9 U.S.C. § 2). "This language 'extends the [FAA]'s reach to the limits of the Congress' Commerce Clause power.'" *Id.* at 292 (citing *Allied-Bruce Terminix Cos.*, 513 U.S. at 273). In determining whether the parties have opted out of the FAA's default regime, the court must decide whether the parties have "manifested a clear intent that any judicial review of the arbitrator's award would be conducted pursuant to standards borrowed from [Delaware] law." *Id.* at 293.

In *Roadway Package System*, the Third Circuit held that "a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default regime."[6] *Id.* at 289. In so holding, the Third Circuit sought to create a rule that would "(1) ensure that parties who have never thought about the issue will not be found to have elected out of the FAA's default regime; (2) be comparatively simple for arbitrators and

---

[6] The contract examined in *Roadway Package System* contained a choice-of-law provision that stated the contract "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." 257 F.3d at 288.

5

district courts to apply; and (3) preserve the ability of sophisticated parties to opt out." *Id.*; *see also Nissan World, LLC v. Mkt. Scan Info. Sys.*, No. 05-02839, 2007 U.S. Dist. LEXIS 41066, at \*\*18-19 (D.N.J. June 5, 2007).

Here, plaintiffs concede that the SPA and the EEA fall within the statutory reach of the FAA. (*See* Pls. Br. Opp'n Summ. J. 25.) They contend, however—citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989)—that the generic choice-of-law clause found in section 11.2 of the SPA alone supports a finding that the parties opted out of the FAA's default regime and elected to incorporate the arbitration rules of the Delaware Act. This contention must be rejected as it runs directly contrary to the Third Circuit's later holding in *Roadway Package System*. Notably, plaintiffs cannot point to any provision in the SPA other than the generic choice-of-law provision to show that the parties even considered the subject of opting out of the FAA's default regime. Further, they have not proffered any extrinsic evidence demonstrating such consideration occurred. *See Roadway Package Sys.*, 257 F.3d at 293. Finally, plaintiffs' reliance on *Volt* to undermine the Third Circuit's holding in *Roadway Package System* is misplaced.

In *Volt*, the Supreme Court affirmed the interpretation of a contract adopted by a California court, which found that the parties intended to opt out of the FAA's default regime and incorporate the arbitration rules of California. 489 U.S. at 471-73. The Third Circuit considered *Volt* in reaching its holding in *Roadway Package System*. The Third Circuit stated: "Our conclusion is consistent with *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), and though [*Volt*] may appear to the contrary, our review of that opinion, the Supreme Court's subsequent decision in *Mastrobuono*, and the unanimous holdings of six other Courts of

6

Appeals convince us that *Volt* is distinguishable." *Roadway Package Sys.*, 257 F.3d at 288. The contract in the instant action, in pertinent part, is indistinguishable from the contract in *Roadway Package System* because both contain only generic choice-of-law clauses without additional evidence of an intent to opt out of the FAA. *See id.* at 294 ("[T]here is no extrinsic evidence that [the parties] gave the matter any consideration. All we have to guide us, therefore, is an arbitration clause and a generic choice-of-law clause. We do not believe that provisions such as these demonstrate a clear intent to displace the FAA's vacatur standards."). Therefore, in light of Third Circuit precedent, which I am of course bound to follow, I conclude that the standards set forth in the FAA are applicable to the instant action.

**B. Whether Plaintiffs Properly and Timely Sought to Have the Arbitration Award Vacated or Modified**

Under the FAA, a party seeking to have an arbitration award vacated or modified must proceed by way of motion. 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."); *see also, e.g., U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 188 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002). "The policy behind [§] 6 'is to expedite judicial treatment of matters pertaining to arbitration.'" *O.R. Sec., Inc. v. Prof'l Planning Assocs.*, 857 F.2d 742, 745 (11th Cir. 1988) (quoting *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 365-66 (2d Cir. 1965)). Thus, parties cannot "initiate a challenge to an arbitration award by filing a complaint." *Id.* (citing *Interior Finish Contractors Ass'n of Del. Valley v. Drywall Finishers Local Union No. 1955*, 625 F. Supp. 1233, 1240 (E.D. Pa. 1985)); *see also IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 308 (3d Cir. 2006) (citing *O.R.*

*Sec., Inc.* for the proposition that "the rules of notice pleading of Fed. R. Civ. P. 8 are inapplicable to proceedings to vacate an arbitration award because relief must be sought in the form of a motion"). Where a party incorrectly files a complaint in order to have an arbitration award vacated, the court can nonetheless reach the merits of the dispute by construing the complaint as a motion to vacate the arbitration award. *See O.R. Sec., Inc.*, 857 F.2d at 746. This is because "[t]he liberality of the . . . Federal Rules is such that an erroneous nomenclature does not prevent the court from recognizing the true nature of a motion." *Id.* (quoting *Sacks v. Reynolds Sec., Inc.*, 593 F.2d 1234, 1239 (D.C. Cir. 1978)).[7]

Here, rather than filing a motion to vacate the arbitration award, plaintiffs improperly filed a complaint. The complaint asserts three claims and seeks to have the arbitration award vacated or, in the alternative, modified. (*See* Am. Compl. ¶¶ 81-86; Pls. Resp. to Defs. Statement of Undisputed Facts ¶ 19.) Although plaintiffs did not properly file a motion as required under the FAA, I will construe their amended complaint as a motion to vacate or modify

---

[7] There is a forceful argument that I should not do so. As the Eleventh Circuit and other courts have noted, "[t]he manner in which an action to vacate an arbitration award is made is obviously important, for the nature of the proceeding affects the burdens of the various parties as well as the rule of decision to be applied by the district court." *O.R. Sec., Inc.*, 857 F.2d at 745; *see also Kruse v. Sands Bros. & Co., Ltd.*, 226 F. Supp. 2d 484, 487 (S.D.N.Y. 2002) (noting that allowing a party to proceed by way of complaint would lead to protracted litigation, a result that runs contrary to the purpose of the FAA). "If . . . the application to vacate the award may be brought in the form of a complaint, then the burden of dismissing the complaint would be on the party defending the arbitration award." *O.R. Sec., Inc.*, 857 F.2d at 745. Likewise, the party defending the arbitration award would also bear the burden in seeking summary judgment. Such a result would be contrary to the FAA's policies of promoting the enforcement of arbitration agreements, *see Allied-Bruce Terminix Cos.*, 513 U.S. at 269, and expediting judicial review of arbitration awards, *see O.R. Sec., Inc.*, 857 F.2d at 745. However, because the result in this action is clear from the current record, there is no need to apply this more technical approach.

the arbitration award.[8] This construction is proper as defendants have moved for summary judgment seeking dismissal of the action, and the parties have submitted briefs, exhibits, and undisputed statements of the facts. *See O.R. Sec., Inc.*, 857 F.2d at 746 (citing *Sacks*, 593 F.2d at 1239). Further, the nature of the claims asserted in the amended complaint are essentially the grounds for a motion to vacate an arbitration award provided by the FAA and relevant case law. *See* 9 U.S.C. § 10; *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279-81 (3d Cir. 2004). Nevertheless, because I conclude that the complaint/motion is untimely under § 12, it must be dismissed.

A court may reach the merits of a motion to vacate an arbitration award only when notice of the motion is "served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12; *see also Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 600 (8th Cir. 1981) ("A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award."). The parties dispute both the date the arbitrator filed or delivered the award and the date plaintiffs served notice of the motion on defendants.

The parties first dispute the date that the arbitrator filed or delivered the award. Plaintiffs contend that the operative date is March 22, 2006, the date that the ICDR delivered the arbitrator's March 20 denial of plaintiffs' request for interpretation. Defendants counter that the

---

[8] While the party making the motion to vacate or modify an arbitration award bears the burden of proving the alleged defect in the arbitration, *see, e.g., Wall Street Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848-49 (2d Cir. 1994), for the purposes of the present motion to dismiss, the court will accept the facts as alleged by the plaintiffs when determining the timeliness of service of notice of the complaint/motion. In any event, there is no disagreement about the facts relevant to the timeliness of the complaint/motion.

operative date is January 9, 2006, the date that the arbitrator filed and delivered the award that is the subject of this suit. For the following reasons, I conclude that the arbitration award in the instant action was filed and delivered on January 9, 2006.[9]

The January 9, 2006 award was "the award" for purposes of § 12 because it evidences the arbitrator's intent to resolve all claims submitted to him. *See Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999) (holding that "an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration" (internal quotation marks omitted)); *McKinney Restoration, Co. v. Ill. Dist. Council No. 1*, 392 F.3d 867, 871 (7th Cir. 2004) (concluding that "an award is final when it is intended by the arbitrator to be his complete determination of every issue submitted to him" (internal quotation marks omitted)).

The January 9, 2006 award contained all of the formalities and content of a final award. The arbitrator titled the award "Final Arbitration Award." (Arbitration Op. 1, Jan. 9, 2006.) The arbitrator concluded that "This Award is the full settlement of all claims submitted to this arbitration." (Arbitration Op. 24, Jan. 9, 2006 (affirming that "this instrument . . . is my FINAL AWARD").) The award stated the date and place where made. (*See* Pls. Br. Opp'n Summ J., Ex. J-1, AAA Int'l Dispute Resolution P., art. 27(3) ("The award shall contain the date and the place where the award was made . . . .").)[10] These labels demonstrate the formalities of a final

---

[9] Plaintiffs refer to January 9, 2006 as the determinative date of this award (Am. Compl. 10; Pls. Br. Opp'n Mot. Summ J. 6) and do not argue that either filing or delivery of this award occurred on a later date.

[10] The SPA agreement provides for application of the "Commercial Arbitration Rules of the American Arbitration Association." (Defs. Mot. Summ J., Ex. A. § 11.10.) Although the arbitrator did not state the set of rules applied in the award, plaintiffs document that the arbitrator applied the International Dispute Resolution Procedures, which are listed among the commercial rules of the AAA. (Pls. Br. Opp'n Summ. J. 6 & n.4, Ex. J-1.) Defendants do not dispute that

award, and more importantly, the arbitrator resolved all claims before him, stating the reasons for his decision. (*See* Arbitration Op. 8-18, Jan. 9, 2006 (resolving issues in the claim related to the environmental damages notice); *id.* 18-23 (resolving the issues raised in the counterclaim); *see also* Pls. Br. Opp'n Summ. J., Ex. J-1, AAA Int'l Dispute Resolution P., art. 27(2) ("The tribunal shall state the reasons upon which the award is based, unless the parties have agreed that no reasons need be given.").) No substantive task was left to be performed by the arbitrator at that point, and no clarification was necessary for the parties to understand their responsibilities under the award. (*See* Arbitration Op. 23-24, Jan. 9, 2006 (authorizing specific payments from escrow, setting specific interest rates and dates of interest accrual, denying the counterclaim and request for attorney fees, and directing payment of arbitration expenses).)

Plaintiffs argue that the FAA's limitations period did not begin to run until March 22, 2006, after the arbitrator denied plaintiffs' subsequent "request for substantive relief" because the arbitrator's authority was continuing. (Pls. Br. Opp'n Summ. J. 34.) In support of their argument, plaintiffs cite case law focusing on exceptions to the doctrine of *functus officio* (Pls. Br. Opp'n Mot. Summ. J. 33.) Plaintiffs' argument is unpersuasive. The arbitrator's March 20 denial of plaintiffs' request does not cast doubt on the conclusion that the January 9 award was the award within the meaning of § 12. *See Thyssen Carbometal Co. v. FAI Energy, Ltd.*, No. 89-1695, 1990 U.S. Dist. LEXIS 427, at **6-10 (D.D.C. Jan. 17, 1990) (holding that respondent's

---

the International Dispute Resolution Procedures were applied to this case and acquiesced to plaintiffs' request for interpretation under those procedures. (*See, e.g.*, Pls. Br. Opp'n Summ. J., Ex. K., Claimants' Resp. to Request for Interp. 1 (responding to plaintiffs' request for interpretation under article 30 of the IDRP without contesting their applicability).) The court will therefore look to the International Dispute Resolution Procedures, but note that the conclusions would not be materially different under the AAA Commercial Arbitration Rules.

motion to vacate was untimely where the respondent could have filed its motion "contemporaneously with its application to change the award" but chose instead to argue that the three-month period did not begin until "the day that the arbitrators reaffirmed their award" pursuant to respondent's post-award motion).

A *functus officio* is defined as an officer "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." Black's Law Dictionary 696 (8th ed. 2004). This doctrine is particularly applicable to arbitration, where an arbitrator's authority exists only until he has "heard the case, made a final award, and disclosed it to both parties." *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 4*, 357 F.3d 546, 553-54 (6th Cir. 2004). Several exceptions to the doctrine of *functus officio* exist, including the following:

> (1) an arbitrator can correct a mistake which is apparent on the face of his award; (2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and (3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.

*Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991) (internal quotation marks omitted) (citing *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967)); (*see also* Pls. Br. Opp'n Summ. J., Ex. J-1, AAA Int'l Dispute Resolution P., art. 30 (allowing a request to the arbitrator "to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award")).[11] The need for an arbitrator's clarification of an ambiguous award arises when "the

---

[11] The court notes that the AAA Commercial Arbitration Rules establish an even more difficult standard for parties seeking modification of an award. *See* AAA Commercial

12

award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation." *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000) (citations omitted); *see also Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 847 (7th Cir. 1995) (holding that uncertainty regarding which party would pay justified the arbitrator's extension of the deadline fixed in the original award).

The Third Circuit in *Colonial Penn*, however, warned against extending the limited exceptions to the doctrine to avoid opening "a Pandora's box which could subvert the policies on which the application of *functus officio* to arbitral decisions are predicated." 943 F.2d at 332. Plaintiffs do not explain how the arbitrator's March 20, 2006 denial falls into the narrow categories of exceptions to *functus officio*.[12] Although the request for interpretation purportedly sought an interpretation or an additional award cognizable under the exceptions to the doctrine of *functus officio*, the arbitrator chose not to exercise any of the authority allegedly granted to him under the exceptions. (*See* Defs. Mot. Summ. J., Ex. G); *see also Colonial Penn*, 943 F.2d at 332 (permitting the arbitrator to correct a mistake, extend his function, or clarify the relief

---

Arbitration R. R-46 ("Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided."). Thus, if contrary to plaintiffs' position, the arbitrator applied the Commercial Arbitration Rules, the court's conclusions regarding the arbitrator's denial of plaintiffs' request for interpretation remains the same.

[12] In this case, plaintiffs argue only that they submitted a "request for substantive relief." (Pls. Br. Opp'n Summ. J. 34.) In the request for interpretation, plaintiffs sought two orders: (1) requiring defendants to repay any amounts received by indemnification from other sources for the Wichita costs (purportedly omitted from the January 9, 2006 award), and (2) clarifying whether the denial of its counterclaim applied to future amounts. (*See* Defs. Mot. Summ. J., Ex. F., Request for Interp. 2, 3, 5, 10.)

awarded). Clearly, the arbitrator's denial of the request for interpretation was not an award for the purposes of § 12, nor did it qualify as an exception to *functus officio*. The arbitrator's March 20 denial was cursory and did not interpret or amend the award in any way. The decision is entitled a "Decision on Respondent's *Post-Award* Request" (emphasis added) and states in its entirety that "Respondents' 'Request for Interpretation or for an Additional Award for Claims Omitted' is hereby denied." The arbitrator apparently concluded either that he could not make another award or that the January 9 award was final and not in need of clarification or amendment. In either case, the arbitrator did not consider the request for interpretation justified. It simply is not the type of "award" issued by an arbitrator under the applicable rules, *see, e.g.*, AAA Int'l Dispute Resolution P., art. 27 (providing that "[t]he tribunal shall state the reasons upon which the award is based"), nor is it, thus, "the award" contemplated by § 12.[13]

Policy considerations likewise support the court's finding in this case. Parties should not be able to delay the intentionally short limitations period for challenging an award merely by filing for a post-award decision. *See Fradella*, 183 F.3d at 20 (holding as "fatally flawed" the contention that "an unsuccessful party could preclude the commencement—or suspend the running—of the limitations period simply by alleging subsidiary errors in their FAA § 10 motions to vacate an adverse arbitral award"); *McCelland v. Azrilyan*, 31 F. Supp. 2d 707, 712 (W.D. Mo. 1998) (holding that § 12 has dual purposes of providing timely notice to the other party and ensuring "a fast, efficient, and inexpensive substitute to litigation"); *Thyssen*

---

[13] The March 20 denial of the request for interpretation could not be "the award" for the purpose of the present FAA motions because plaintiffs have not asked the court to enforce, vacate, or modify it, instead directing their challenge to the January 9, 2006 award, on which the denial of the request depends for the entirety of its substance.

*Carbometal Co.*, 1990 U.S. Dist. LEXIS 427, at **8-9 (concluding that "[t]o hold otherwise would be to defeat the very purpose of the [FAA, which] disfavors delayed challenges to the validity of an award."). I thus conclude that the January 9, 2006 award started the three-month period within which § 12 requires plaintiffs to serve notice of their motion on defendants. Because the three-month filing period started on January 9, 2006, plaintiffs failed to properly comply with the timely filing requirement under § 12. At the earliest, plaintiffs allege that they served the original complaint by email received by defendants on June 21, 2006, well after the three-month window expired. (Pls. Br. Opp'n Summ. J., Ex. Q.)

As noted earlier, the parties, however, also dispute the date of proper service of notice of the complaint/motion to vacate or modify the award. The court concludes that plaintiffs' June 21, 2006 email fails to comply with the service of notice requirements of § 12. In pertinent part, section 12 requires that: "If the adverse party shall be a nonresident [of the district within which the award was made] then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court."[14] The June 21 email does not constitute proper service of notice under § 12. Generally, email service of process is insufficient to provide adequate notice to the party served unless the other party has agreed in writing to accept electronic service. *See* Fed. R. Civ. P. 5(b)(2)(D) (providing that service may be properly made by "[d]elivering a copy by any other means, including electronic means, consented to in writing by the person served"); E.D. Pa. Local R. Civ. P. 5(e) (establishing that "[s]ervice of process will continue to be made in accordance with

---

[14] Plaintiffs' amended complaint establishes that defendants are non-residents for purposes of the court's present consideration. (*See* Am. Compl. ¶¶ 11-13.)

15

those provisions set forth in Rule 5 of the Federal Rules of Civil Procedure."). The consent requirement exists to protect the recipient of service. *See Albertson v. Winner Auto.*, No. 01-116, 2004 U.S. Dist. LEXIS 21859, at *13-14 (D. Del. Oct. 27, 2004) (finding that "[t]he requirement for consent, as discussed by the Advisory Committee, was to protect the party receiving service 'because it is not yet possible to assume universal entry into the world of electronic communication.'" (quoting Fed. R. Civ. P. 5, 2001 amendments, advisory comm. notes)). Plaintiffs submit no evidence that defendants provided such consent.

Plaintiffs have guided the court to no legal authority allowing service of the motion by email, have offered no proof that defendants consented to service via electronic means, and have provided no factual basis to conclude that the motion was otherwise "served by the marshal of any district within which the adverse party may be found in like manner as other process of the court," *see* § 12. Thus, the court concludes that service of the complaint presently construed as a motion to vacate or modify the arbitration award by email on June 21, 2006 failed to comply with § 12's requirements. Plaintiffs submit no other evidence of service of the original complaint. Proper service of notice did not occur until October 20, 2006, the date that plaintiffs concede they first served defendants with copies of the amended complaint at their registered Delaware agents. (*See* Defs. Mot. Summ. J. 9.)

Plaintiffs' complaint/motion was, therefore, untimely under the FAA for multiple reasons. Because the time to serve a motion to vacate or modify the arbitration award under § 12

16

expired well before the date of service, I will grant defendants' motion for summary judgment and dismiss the action with prejudice as untimely.[15]

An appropriate order follows.

---

[15] Defendants have asked the court to confirm the arbitration award through a request in their motion for summary judgment filed January 16, 2007. Defendants filed this motion outside of the one-year filing period to seek an order confirming the award, which began when the award became final on January 9, 2006. *See* 12 U.S.C. § 9 (codifying that "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award"); *see Photopoint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152 (2d Cir. 2003) (holding that § 9 creates a one-year limitations period under the FAA for filing a motion to confirm); *Gen. Elec. Co. v. Anson Stamping Co.*, 426 F. Supp. 2d 579 (W.D. Ky. 2006) (analyzing the split between the courts of appeals and concluding *Photopoint* is most persuasive); *but see Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148 (4th Cir. 1993) (holding that § 9 contains a permissive, non-binding period to seek confirmation). Although the court may construe a motion for summary judgment as a motion to confirm an award, *see, e.g., Maidman v. O'Brien*, 473 F. Supp. 25 (S.D.N.Y. 1979), I will not do so in this case because neither party has briefed confirmation of the award.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WASHBURN S. OBERWAGER et al.,<br>Plaintiffs, | :<br>:<br>: CIVIL ACTION<br>: |
| v. | :<br>: NO. 06-2685 |
| MCKECHNIE LTD. et al.,<br>Defendants. | :<br>:<br>:<br>: |

## Order

AND NOW, this __10__ day of December, 2007, upon consideration of plaintiffs' complaint and amended complaint, which have been construed as motions to vacate or modify the arbitration award, defendants' motion for summary judgment (Document No. 9), plaintiffs' response and defendants' reply, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment is **GRANTED** and judgment is entered in favor of the defendants, McKechnie Limited formerly McKechnie PLC and Western Sky Industries, LLC successor to McKechnie US Holdings, Inc. and against plaintiffs, Washburn S. Oberwager, Dinesh R. Desai, First Britannia Mezzanine Capital BV, First Britannia Mezzanine NV, International Mezzanine Capital BV and International Mezzanine Investment NV, and the action is **DISMISSED** with prejudice as untimely under the Federal Arbitration Act, 9 U.S.C. § 12.

2. The clerk shall mark this action **CLOSED FOR STATISTICAL PURPOSES**.

William H. Yohn Jr., Judge